# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                    **Case No. 06-CR-9**

**MARVIN CLEMENTS**
        **Defendant.**

## SENTENCING MEMORANDUM

A jury convicted defendant Marvin Clements of possessing a firearm as a felon and while under a domestic abuse injunction, 18 U.S.C. §§ 922(g)(1) & (g)(8), and I ordered the probation office to prepare a pre-sentence report ("PSR") in anticipation of sentencing.[1] The PSR set defendant's base offense level at 20 due to his prior conviction of a controlled substance offense, U.S.S.G. § 2K2.1(a)(4)(A), then added 2 levels for obstruction of justice, § 3C1.1, based on his commission of perjury at trial. Coupled with a criminal history category of III, the PSR recommended an imprisonment range of 51-63 months.

Defendant objected to the § 3C1.1 enhancement and to the inclusion of certain offenses in his criminal history score, and requested a sentence below the range. The government supported the PSR and advocated a within-range sentence of 54 months. I rejected defendant's guideline arguments, but upon consideration of the factors in 18 U.S.C. § 3553(a), imposed a sentence slightly below the range. In this memorandum, I provide written reasons for the sentence imposed.

---

[1] The government agreed to dismiss the § 922(g)(8) count at sentencing. See United States v. Richardson, 439 F.3d 421, 422 (8th Cir. 2006) (stating that the defendant may be convicted under only one § 922(g) classification based on a single incident of possession).

## I. SENTENCING PROCEDURE

In imposing sentence, the court must first determine the advisory sentencing guideline range, resolving any factual disputes necessary to that determination. Then, the court must select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007).

## II. DISCUSSION

**A.  Guideline Calculations**

**1.  Section 3C1.1 Enhancement**

Defendant objected to the 2-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1, which the PSR based on defendant's commission of perjury at trial. Defendant stated that he merely exercised his right to testify and did so according to his perception of events on the date of his arrest, November 4, 2005.

The government bears the burden of proving by a preponderance of the evidence that an obstruction enhancement is warranted. United States v. Ewing, 129 F.3d 430, 434 (7th Cir. 1997). Application note 4(b) to the guideline lists perjury as an example of the conduct that would support the enhancement. U.S.S.G. § 3C1.1 cmt. n.4(b). However, the enhancement cannot be based solely on the fact that the defendant testified, and the jury convicted. Rather, the court should look for the elements of perjury: falsity, wilfulness and materiality. United States v. Brimley, 148 F.3d 819, 823 (7th Cir. 1998). In order to justify the enhancement, the defendant's testimony must be intentionally false, rather than a result of confusion, mistake or faulty memory. See United States v. Dunnigan, 507 U.S. 87, 94 (1993).

2

I found that the enhancement applied in the present case. At trial, the government's case was based on the testimony of two police officers who responded to a suspicious person complaint, encountered defendant sitting in a car and ordered him out. When defendant exited the vehicle, a magazine for a firearm fell from his lap. A subsequent search of the back seat area turned up a .22 caliber rifle. I found the officers entirely credible.

In denying the officers' testimony as to these events, defendant perjured himself in several material respects. First, defendant testified that he was sitting in the car only to get warm; he claimed to have never been in it before that day. However, this testimony was contradicted by a receipt for his purchase of the car dated September 26, 2005, more than a month earlier, which officers found in defendant's wallet. At trial, defendant denied ever seeing the receipt until the police showed it to him after the arrest, but that claim was incredible. The fact that the car was not officially titled to defendant is irrelevant; this was obviously a private sale on the street. Defendant's version was also contradicted by a statement from his son, detailed in ¶ 15 of the PSR, that he had seen defendant driving a white car, which defendant said was new, several weeks earlier.

At trial, defendant also contradicted his earlier statement to the police about the car. He told the police that he saw his cousin and friend driving in the car and got in the back seat to ride around with them. The car ran out of gas, he said, and when the others went to get some he moved to the front seat so it wouldn't "look weird." He said he was in the front seat cleaning his nails with a knife when the police arrived. However, at trial, defendant said he did not see the others drive the car but rather met them in the area and was drinking with them when they left to get gas, and he then got in the front seat to stay warm. He also testified, contrary to his earlier statement, that he had never been in the back seat of the car, where the gun was found.

3

But papers and books belonging to defendant were found in the back seat.

Second, defendant testified at trial that a cigarette lighter, not a clip for the gun, fell from his lap when he exited the car. I found that the officers testified truthfully that a magazine fell, not a lighter, and that defendant was untruthful in this regard.

Third, defendant testified that he did not know the gun was in the car. However, under all of the circumstances I found that to be untrue, and willfully so.

None of this could reasonably be chalked up to confusion, mistake or faulty memory. This was willfully false testimony designed to influence the jury to acquit on the issue of knowing possession, the only element of the offense in dispute. Therefore, the enhancement applied.

**B.     Criminal History Scoring Objections**

Defendant objected to 2 criminal history points assessed for a marijuana possession offense in ¶ 35 of the PSR. However, the final PSR properly assessed just 1 point for this conviction, which carried a sentence of six months jail imposed and stayed for eighteen months probation.[2] Defendant further argued that the scoring of any points for this offense overstated the severity of his record under U.S.S.G. § 4A1.3(b). However, that was a departure argument, not a guideline calculation issue. Therefore, I overruled the objection but agreed to consider the issue in imposing sentence.[3]

Finally, defendant objected to the 1 criminal history point assigned to a bail jumping

---

[2]Apparently, an earlier version of the PSR assessed 2 points, but this error was corrected before submission to the court.

[3]I noted that even without this point, defendant still had 4 points and thus fell in category III.

4

conviction in ¶ 36 of the PSR. He claimed that this offense should not score because the underlying charges on which he had been admitted to bail were dismissed. It is true that defendant's underlying convictions for violation of a domestic abuse injunction were vacated on appeal based on an error in instructing the jury, and the state elected to dismiss those counts on remand, but the bail jumping conviction was affirmed on appeal and remained of record. See State v. Clements, No. 00-2850-CR, 2001 Wisc. App. LEXIS 670 (Wis. Ct. App. June 26, 2001). I saw no basis under the guidelines for disregarding a valid bail jumping conviction simply because the underlying case was dismissed. Defendants are obligated to follow the conditions of release, even if they did not commit the underlying crime.

Therefore, I overruled defendant's objections and adopted the PSR's factual statements and guideline calculations.

**B.     Imposition of Sentence**

   **1.     Section 3553(a) Factors**

"When sentencing a defendant, a district court must consider all sentencing factors enumerated in 18 U.S.C. § 3553(a)." United States v. Harris, No. 05-4259, 2007 U.S. App. LEXIS 14012, at *9 (7th Cir. June 15, 2007) (citing United States v. Dean, 414 F.3d 725, 728 (7th Cir. 2005)). Those factors include:

   (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2)   the need for the sentence imposed–

         (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

         (B) to afford adequate deterrence to criminal conduct;

5

> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in sub-section (a)(2).

**2. Analysis**

**a. Nature of Offense**

As discussed above, officers responding to a "suspicious person in an auto" complaint came upon defendant sitting in a car. They ordered him to exit and a magazine for a firearm fell from his lap. A subsequent search turned up a .22 caliber rifle in the back seat. As a felon and someone subject to a domestic abuse injunction, defendant could not possess firearms.

**b. Character of Defendant**

Defendant was thirty-one years old and had a fairly significant record, including a juvenile drug distribution case, an adult drug distribution case, and adult drug possession and bail jumping convictions. However, he did not have a prior criminal record for violent or weapons offenses. I acknowledged the domestic abuse injunction, but I did not have evidence of the specifics leading to the entry of that order. The bail jumping violation involved telephonic

6

contact with the victim. Defendant did poorly on probation on the bail jumping offense, absconding to Tennessee, where he picked up a reckless driving charge.

Defendant was not married but had four children from a previous relationship. It appeared that his contact with them was hindered by issues with the mother, who held the injunction. He owed about $17,000 in back child support.

Defendant appeared to be an intelligent person. He obtained his GED while in prison and completed some post-secondary education at ITT Tech and MATC. He had a decent employment record, working as a bindery worker, laborer and driver.

Although a competency exam revealed defendant to be fit for trial, I found that he had significant, untreated mental health issues. His disruptive behavior during the trial and his rambling statement at sentencing reflected obvious self-control issues that needed to be addressed.[4] Defendant also reported some alcohol and marijuana use but did not appear to currently have significant substance abuse issues. However, I found that testing and treatment would be appropriate to ensure his sobriety.

### c. Guidelines and Purposes of Sentencing

The guidelines called for a term of 51-63 months. Under all of the circumstances, I found a sentence slightly below the range sufficient but not greater than necessary to satisfy the purposes of sentencing. Although defendant's record was not slight, it did not suggest someone likely to engage in firearm violence. The present case represented his first conviction

---

[4] During the trial, defendant provided commentary on the testimony of witnesses, argued with the court and counsel, and otherwise behaved badly. While I was required to admonish defendant repeatedly, his conduct did reach the point where I felt compelled to remove him under Fed. R. Crim. P. 43(c)(1)(C). My belief at trial, which was confirmed at sentencing, was that defendant was not deliberately obstreperous but rather had significant self-control issues stemming from untreated mental illness.

7

for a gun or violent crime.[5] His prior drug cases were pretty old, and the distribution case that produced the base level of 20 under U.S.S.G. § 2K2.1(a) was from 1993, when defendant was just seventeen years old and waived into adult court. Therefore, because the felon in possession guideline assesses the severity of the offense based on the nature of the defendant's prior record, and this defendant's specific record did not suggest a great risk, I concluded that a sentence somewhat below the range would be sufficient to provide just punishment and protect the public. See 18 U.S.C. § 3553(a)(2)(A) & (C). I also noted that there was no evidence that defendant intended or threatened any harm with the gun. It was a rifle, not a handgun, and appeared to be a pretty old one at that.

I concluded that a sentence of 48 months was sufficient but not greater than necessary. This sentence was far longer than any previous term defendant had served, and thus was sufficient to deter him from committing future crimes. This sentence was also sufficient to deter others from committing similar possessory offenses. 18 U.S.C. § 3553(a)(2)(B).

As discussed, defendant had correctional treatment needs, but given the other factors I had to consider, those needs had to be addressed initially via recommendations to the Bureau of Prisons ("BOP") and later as conditions of supervised release. See 18 U.S.C. § 3553(a)(2)(D).[6]

---

[5] The PSR referred to several fights, but none appeared to be all that serious or led to criminal charges against defendant.

[6] At sentencing, the government described defendant as selfish, unreflective and anti-social, and in need of treatment. I agreed that defendant was in need of mental health treatment to address his issues, but I disagreed somewhat with the government's specific prison recommendation. Prison is generally not an appropriate means of enforcing treatment, and to the extent that defendant would receive helpful treatment in prison, the sentence I imposed provided sufficient time for such to occur. I agreed with the government that a maximum term of supervised release was necessary to address these issues.

8

## III.  CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 48 months. I recommended that he participate in any mental health and drug treatment programs available and be placed at a suitable facility to address those needs.  Upon release, I ordered defendant to serve a three year supervised release term with drug aftercare and mental health treatment conditions.  I selected the maximum term of supervision to ensure that defendant was monitored and received appropriate treatment.

Dated at Milwaukee, Wisconsin, this 6th day of August, 2007.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

9